UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SENSIBLE LOANS INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | 5:20-cv-1512-LCB |
| ) | |
| ) | |
| ) | |
| ) | |
| **BLOC INDUSTRIES INC.,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OF OPINION AND ORDER**

Presently pending for the undersigned's consideration is Plaintiff's "Emergency Motion for Injunctive Relief and Supporting Memorandum of Law." (Doc. 134.) For the following reasons, the motion is due to be denied in part and reserved in part for consideration by the district judge assigned to this case.

**I.    Background and Procedural History**

This action was removed to this Court from the Circuit Court of Madison County, Alabama, on September 30, 2020, and assigned to United States District Judge Abdul Kallon. The claims in this action are state law claims for breach of contract, detinue, and fraud concerning Defendants' failure to comply with two

1

settlement agreements entered into by the parties concerning the sale of hazmat suits stored in a warehouse in Theodore, Alabama.

The facts generally alleged are as follows. Defendant, Karen Davidson ("Davidson"), as President and sole shareholder of Defendant, Blok Industries, Inc. ("Blok"), incurred a debt to Plaintiff, Sensible Loans, Inc. On or about May 2020, Davidson, on behalf of Blok, executed a Settlement Agreement with Plaintiff in which Blok agreed to pay a sum of $2,165,000 in installments to Plaintiff on or before November 1, 2020. Also pursuant to the Settlement Agreement, in the event of nonpayment, Blok would enter into a security agreement with Plaintiff granting Plaintiff a security interest in the hazmat suits as collateral. Blok failed to pay Plaintiff by November 1, 2020, or to deliver the security agreement. This prompted Plaintiff to file the instant suit.

However, Blok earned somewhere between $8-and-10 million from the sales of the hazmat suits in 2020 and 2021. Davidson failed to use the proceeds from these sales to pay her debt to Plaintiff as required by the Settlement Agreement, and instead, though her legal counsel, created what Plaintiff contends are multiple shell companies, including "180 Glenn Drive, LLC" and "1515 E. Hewett, LLC," in order to hold title to and conceal the existence and ownership of certain assets and properties that she purchased with the proceeds of the sales of the hazmat suits. For

instance, Davidson used approximately $1.1 million to buy two residential properties, one located in Florida and the other in North Carolina.

In March 2022, Plaintiff moved for partial summary judgment against Davidson and Blok on several counts of the complaint, the subject of which were the issues between Plaintiff and Blok under the Settlement Agreement. Davidson failed to oppose the motion or appear at three consecutive hearings on the matter. In April 2022, Judge Kallon granted the motion for partial summary judgment. Plaintiff requested that the Court enter a final judgment on the dismissed counts pursuant to Federal Rule of Civil Procedure 54(b) so that Plaintiff could "perfect its judgment lien and otherwise pursue enforcement" of the judgment because "Plaintiff has been concealing and fraudulently disposing of its money and assets . . . ." On July 1, 2022, Judge Kallon agreed to do so, entering a final judgment in this matter in favor of Plaintiff and against Blok for $1,683,609.51. Judge Kallon noted that the Defendants' conduct during the pendency of the lawsuit gave him good cause to enter the final judgment without further delay.

Plaintiff says that the amount remains unpaid by Blok, and in fact, on July 12, 2022, Davidson, as manager of "1515 E. Hewett, LLC," executed and recorded a deed to herself, as grantee, of the Florida property, in order to shield it from her creditors, including Plaintiff, under Florida's unlimited homestead exemption.

Plaintiff further states that on October 28, 2022, Davidson executed a mortgage on the Florida property in the sum of $550,000, giving her access to cash, which was recorded on November 3, 2022.

Upon Judge Kallon's resignation as a district judge, this case was reassigned to United States District Judge Liles Burke on September 9, 2022. Judge Burke conducted an in-person status conference with the parties on November 3, 2022, during which Davidson personally appeared, and, according to Plaintiff, misrepresented to the Court that she had no job and no money, could not afford counsel, and thus needed the Court to suspend all proceedings, despite the fact that her $500,000 mortgage on the Florida property had actually been recorded that same day.

Several days after the in-person status conference, Plaintiff filed a Fourth Amended Complaint, alleging, among other things, that Davidson's transfers of the proceeds from the sale of the hazmat suits to purchase the properties, as well as the mortgage she took out on the Florida property, all constitute voidable transactions and actual fraud under the Uniform Voidable Transfers Act, because they were made while Blok was insolvent and made without Blok receiving as consideration reasonable equivalent value and with the fraudulent intent to hinder, delay, and defraud Blok and Davidson's creditors, including Plaintiff.

Finally, Plaintiff states that most recently, on November 22, 2022, Davidson dissolved Blok by filing Articles of Dissolution, in which she mispresented that "no debt of the corporation remains," despite knowing that on July 1, 2022, this Court entered a judgment in favor of Plaintiff and against Blok for over $1 million.

On December 5, 2022, Judge Burke began conducting a civil jury trial in Florence, Alabama. On December 6, 2022, Plaintiff filed the motion that is the subject of this order, styled "Emergency Motion for Injunctive Relief and Supporting Memorandum of Law." (Doc. 134.) Plaintiff seeks, pursuant to Federal Rule of Civil Procedure 65, a temporary restraining order, preliminary injunction, and permanent injunction against Blok and Davidson, which would prevent Blok and Davidson from the sale or encumbrance of the properties and from the concealment or disposition of cash proceeds from the allegedly fraudulent mortgaging of the properties.

Because he was not available to rule on the motion due to his trial, Judge Burke requested that the Clerk randomly draw another district judge to dispose of the motion for a temporary restraining order. The undersigned district judge was drawn.

## II. Discussion

Insofar as Plaintiff seeks a temporary restraining order ("TRO"), that request is due to be denied at this time. TROs differ from preliminary injunctions in that they

may be issued without notice to the adverse party if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). On the other hand, a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). A TRO is an "extraordinary remedy," and courts should "pay particular regard for the public consequences" of granting this type of remedy. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). *Ex parte* TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)).

Nonetheless, the standard for TROs and preliminary injunctions is the same: they may be issued when the movant demonstrates: (1) "there is a substantial likelihood of success on the merits"; (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury"; (2) "the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant"; and (4) "the TRO or preliminary injunction would not be averse to the public interest."

*Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). Preliminary injunctions are also an "extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir.1974)).

Plaintiff does not offer specific argument as to why a TRO, as opposed to a preliminary injunction, is warranted at this time, other than to claim that "[t]he necessity of the immediate entry of a temporary restraining order is particularly compelling here because Davidson has now wrongfully and secretively obtained $550,000.00 in cash money, which rightfully belongs to Blok, and which by its nature is especially vulnerable to loss and concealment in Davidson's unfettered and unscrupulous hands." (Doc. 134 at 7-8.) However, Plaintiff has not shown that it will suffer "immediate and irreparable injury, loss, or damage," *see* Fed. R. Civ. P. 65(b)(1)(A), before the Court can hold a hearing on the issue of Davidson's $500,000 mortgage on the Florida property. To the contrary, the record indicates that Plaintiff has known about Davidson's execution of the deed to herself as grantee of the Florida property and the $500,000 mortgage on the property for at least one month, as it filed its Fourth Amended Complaint adding such allegations on November 7, 2022, shortly after the parties participated in an in-person status

conference with Judge Burke. (*See* Fourth Amended Complaint, Doc. 127, at 2-3, ¶¶ 10-11).

The Court is sympathetic to Plaintiff's request for relief, assuming its allegations concerning Blok and Davidson's continued concealment of funds are accurate, but the more appropriate avenue to obtain such relief is through a request for a preliminary injunction rather than a TRO. Indeed, in its motion Plaintiff offers a thorough argument as to why it believes it is entitled to a preliminary injunction and requests that the Court set a hearing on its request.

### III. Conclusion

For the aforementioned reasons, Plaintiff's motion for injunctive relief (doc. 134) is hereby **DENIED IN PART AND RESERVED IN PART** for a ruling by the assigned district judge. Insofar as Plaintiff requests that this Court enter a TRO, such request is **DENIED**. Insofar as Plaintiff requests that the Court set a hearing on its request for a preliminary injunction, the undersigned finds that such request is more appropriately **RESERVED** for a ruling by the district judge assigned to this case, Judge Burke. The Clerk is directed to transfer this action back to Judge Burke.

**DONE** and **ORDERED** on December 8, 2022.

_____
L. Scott Coogler
United States District Judge

160704

9